UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

BROOKE KLEVEN, et al.,

    Plaintiffs,

    v.

ST. JOSEPH COUNTY, et al.,

    Defendants.

Case No. 3:21-CV-961 JD

## OPINION AND ORDER

Defendant, Motorola Solutions, Incorporated, has moved for the claims against them to be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). Motorola argues that the Plaintiffs, Brooke Kleven et al. ("the Klevens"), have failed to state a claim against them on which relief can be granted. (DE 40.) For the following reasons Motorola's motion will be denied.

**A. Factual Background**

Motorola is one of several defendants named by the Klevens in a lawsuit stemming from events on December 31, 2019. The general facts of this incident are that the Klevens' car, with several members of the family inside, slid off the road and into a nearby pond. The family members in the car became trapped and two perished while the others were injured before first responders could rescue them from the car. During the course of this incident Brooke Kleven and several witnesses made 911 calls which were answered by St. Joseph County emergency dispatchers. The Klevens allege the tragic outcome of this accident was largely attributable to

tortious conduct by the 911 emergency dispatchers who failed to effectively direct the necessary assistance to the Klevens.

Motorola's alleged role in this incident stems from their contract with St. Joseph County ("the Contract") to implement a Computer Aided Dispatch system, called the PremierOne System ("the P1 system") at the St. Joseph County Public Safety Communications Consortium ("PSCC"), and training the PSCC staff on how to utilize the system. Count IX of the Klevens' complaint, an Indiana state law negligence claim, alleges that Motorola breached its duty of care towards the Klevens in negligently implementing the P1 system, negligently training the dispatchers on the use of the P1 system, and not complying with the safety duties and responsibilities set forth in the written agreement between Motorola and St. Joseph County.[1] Specifically, the Klevens allege that Motorola's negligent, grossly negligent, or reckless actions in implementing the P1 system were a direct and proximate cause of the ineffective emergency response to their car being trapped in the pond, and the resulting injuries.

**B. Legal Standard**

In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), the Court construes the complaint in the light most favorable to the plaintiff, accepts the factual allegations as true, and draws all reasonable inferences in the plaintiff's favor. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). A complaint must contain only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). That statement must

---

[1] The Klevens' complaint refers to twenty-five specific negligent acts by Motorola. In the interest of brevity the Court does not restate them here. (DE 5 at ¶ 636(a)–(y).)

contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and raise a right to relief above the speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). However, a plaintiff's claim need only be plausible, not probable. *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). Evaluating whether a plaintiff's claim is sufficiently plausible to survive a motion to dismiss is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678).

### C. Discussion

Motorola raises two arguments in favor of their motion to dismiss. First, they argue that they owe no duty to the Klevens based on their contractual promises to St. Joseph County and therefore the Klevens cannot establish the elements of a negligence claim. Second, they argue that even if they did owe a duty to the Klevens, they would be protected by immunity from suit under Indiana state law as a "provider" of a 911 service. The Klevens counter each of these points, arguing Motorola owed them a duty based on the responsibilities it accepted through its contract with St. Joseph County, and that it either does not qualify for statutory immunity or an exception to the immunity statute applies. In the alternative, the Klevens request that the Court grant them leave to amend their complaint and make a more definite statement of the legal duties Motorola breached. The Court will address each of Motorola's arguments in turn.

*(1) The Court is unable to conclude that Motorola did not owe a duty to the Klevens given the record at this stage of the proceedings*

Motorola's first argument is that their contract with St. Joseph County did not create a legal duty to the Klevens, and consequently the Klevens cannot bring a negligence claim against them. Given the limited development of the record so far, particularly the extensive redaction of the Contract, the Court cannot agree with this assertion and will deny the motion.

The tort of negligence is composed of three elements: (1) duty owed to the plaintiff by the defendant, (2) breach of duty by allowing the conduct to fall below the applicable standard of care, and (3) compensable injury proximately caused by the defendant's breach of duty. *Goodwin v. Yeakle's Sports Bar & Grill, Inc.*, 62 N.E.3d 384, 386 (Ind. 2016). Generally a contract only establishes duties between the parties to the contract or third-party beneficiaries. *OEC-Diasonics, Inc. v. Major*, 674 N.E.2d 1312, 1314–15 (Ind. 1996). Further, the intent to establish a third-party beneficiary must be supported by the language of the contract itself. *Id.* at 1315.

The parties do not dispute that the only signatories to the Contract were Motorola and St. Joseph County, and that the Klevens are not explicitly named as third-party beneficiaries. Rather, the parties dispute whether Motorola is potentially liable for negligence in carrying out its contractually assumed duties under the precedent established by the Indiana Supreme Court in *King v. Northeast Security Incorporated.* 790 N.E.2d 474 (Ind. 2003).[2] In *King,* the court held that there are circumstances where a person can sue a contracting party for negligent performance of their contractual duties even when the plaintiff is not a party to a contract or a third-party beneficiary.

---

[2] The Klevens' response to the motion raises a host of additional sources for Motorola's duty to them including "common law, federal regulations, [and] industry standards" (DE 47 at 10). However, there are no references to these sources in the complaint, which instead only discusses contractual duties, and the Klevens do not provide any analysis or citation to authority to support these arguments. Accordingly, the Court will discard these arguments as underdeveloped. *See Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 607 (7th Cir. 2016) (Arguments which are underdeveloped or unsupported by legal authority are waived).

In *King* the court applied this rule in holding that students, who were assaulted on school property, could sue the security company hired by the school district for negligence despite not being a party to the contract or a third-party beneficiary. *Id.* at 485–86. The *King* court concluded the students were owed a duty by the security company because the school district had an obligation to protect its students, the security company had assumed that responsibility through the terms of their contract, and the students were "plainly among the persons who are properly on the premises and entitled to expect reasonable steps to be taken for their safety." *Id.* at 486.

The Klevens argue that they can bring a negligence claim against Motorola because their case is directly analogous to *King*. The Klevens allege that by the terms of the Contract, Motorola was required to fully implement the P1 System at the PSCC, train the PSCC staff on the system, and otherwise abide by the safety duties and responsibilities in the Contract. The Klevens argue that the purpose of the Contract was to support public safety dispatch operations and is analogous to the contract in *King* which had the purpose of providing security services for the school. Further, any negligence in performance of these contractual duties would undoubtedly affect the safety of 911 callers, much like how negligence in performance of security duties could impair student safety. Therefore, like the students in *King*, the 911 callers were among those persons who would expect Motorola to take reasonable steps for their safety.

Motorola argues that *King* does not govern this case as it was a narrow holding and it is factually distinct. Motorola first argues that the Indiana courts have been reluctant to expand the scope of *King* and therefore it should not be expanded to these circumstances. In support Motorola cites to two cases following *King* where the courts declined to extend a security firm's duties in other contexts. *Polet v. ESG Sec., Inc.*, 66 N.E.3d 972, 981 (Ind. Ct. App. 2016); *Star Wealth Mgmt. Co. v. Brown*, 801 N.E.2d 768, 774 (Ind. Ct. App. 2004). Motorola also offers the

policy argument that the Klevens' interpretation dramatically and unfeasibly expands the scope of *King*'s holding, taking it from recognizing duties to narrowly defined groups of people to making Motorola an insurer for an "unlimited universe of people" who might dial 911 within the PSCC's service area. (DE 48 at 5.)

Second, Motorola argues that *King* is factually distinct. Motorola notes its contractual duties were more limited than those of the security company in *King* and had in fact entirely concluded by the time the December 31, 2019, incident took place. While the security company was on-site and executing its contractual obligations when the *King* plaintiffs were harmed, Motorola states it was not on-site at the PSCC in December 2019 as it had no contractual obligation to be. Motorola indicates by that date it had already concluded its contractual obligation of implementing the P1 System and training the PSCC dispatchers to use the system. Motorola further indicates that its contract did not include an obligation to oversee 911 dispatchers after the "Go-Live" date.[3] In support of these arguments, Motorola proffered an extensively redacted copy of the 500-page Contract which the Court considered in reviewing this motion. *Brownmark Films v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) ("if a plaintiff mentions a document in his complaint, the defendant may then submit the document to the court without converting defendant's 12(b)(6) motion to a motion for summary judgment").

The unredacted portions of the Contract would seem to support Motorola's contention that it is distinct from the contract in *King* and contains a narrow set of duties owed solely to St. Joseph County, and thus no duty to the Klevens exist. However, Motorola's extensive redaction of the Contract precludes the Court from definitively reaching this conclusion. (*See* DE 41-1.)

---

[3] The Klevens acknowledge Motorola had no contractual obligations as of December 31, 2019, but argue the point is moot as they are only claiming Motorola negligently implemented the P1 System and negligently trained PSCC staff (DE 47 at 19 n.4).

The *King* court grounded its conclusions about the security company's assumption of duty in the text of the contract itself, which clearly enumerated the security company's obligations. *King*, 790 N.E.2d at 485–86. These obligations included requirements to provide exterior patrols, ensure all personnel entering school property had proper identification, and be observant of any criminal behavior which might occur in the parking lots. *Id.* at 486. Based on these provisions, the *King* court found the contract's purpose to plainly be for providing security services for the school, including protecting members of the public such as students, who were properly on the school premises. *Id.*

Subsequent cases in the Indiana courts interpreting *King* also rely heavily on reviewing the contracts at issue to determine whether a duty exists. *See Brown*, 801 N.E.2d at 774 (in affirming a grant of summary judgment, the court declined to find *King* governed the case, in part because the plaintiff had not provided the contract at issue for the appellate court to analyze and determine what responsibilities the security officer had assumed); *Polet*, 66 N.E.3d at 981 (in affirming a grant of summary judgment, the court declined to find *King* liability existed because the contractual agreement made no mention of a duty to protect patrons from a stage collapse caused by high winds).

Ultimately, Motorola's extensive redaction of the Contract precludes the Court from definitively reaching a conclusion about whether a duty exists. While the Court will not speculate as to the content of the redacted portions of the Contract, the possibility that the vast swathes of redacted text contain other terms which could impact the *King* analysis is sufficiently plausible that the Court will not provide Motorola an adjudication on the merits based on the

existing record.[4] The issue of what, if any, duties Motorola owes the Klevens based on the Contract is better resolved after some discovery has occurred, such as in a motion for summary judgment. After there has been an opportunity for the Klevens to determine the full terms of the contract during discovery, and specifically articulate what provisions support Motorola's alleged duty, the Court will be able to render a fully informed decision on the issue.[5]

### (2) The Court will not grant this motion on the basis of an affirmative defense

Motorola's second argument in favor of the motion is that they are shielded from liability by Indiana law as they are a provider of 911 services. The Klevens argue Motorola is not eligible for this immunity or, alternatively, qualifies for an exception to it. However, the Court does not need to decide these issues now as immunity is an affirmative defense, and a Rule 12(b)(6) motion is not the appropriate avenue to pursue an affirmative defense.

To begin, the Court will first provide some background on the issue of immunity. Indiana law states that "providers" are immune from liability for injuries incurred by a person in connection with "establishing, developing, implementing, maintaining, operating, and providing 911 service except in the case of willful or wanton misconduct." Ind. Code. § 36-8-16.7-43. The Klevens argue that Motorola does not meet the definition of a "provider" under the statute and thus is not eligible for immunity, and in the alternative Motorola's actions qualify for the "willful or wanton misconduct" exception.

---

[4] The Court does not intend to question the propriety of any of Motorola's redactions or imply a public disclosure of the entire Contract is the only course to resolve the question of duty. The Court reminds the parties that the judicial tools of protective orders and filing documents under seal are available to protect confidential information.

[5] The Court reaffirms that the Klevens, as the plaintiffs, bear the burden of proving the elements of their case, including that Motorola owed them a duty based on the terms of the Contract.

What is most important for this motion, however, is the fact that immunity is an affirmative defense. *Howard Cty. Sheriffs Dept. and Howard Cty. 911 Comm. v. Duke*, 172 N.E.3d 1265, 1272 (Ind. Ct. App. 2021), *trans. denied sub nom*. *Howard Cty. Sheriff v. Duke*, 175 N.E.3d 273 (Ind. 2021) (noting immunity for 911 service providers is an affirmative defense). As the Klevens correctly note, a Rule 12(b)(6) motion is not the proper avenue for a defendant to pursue an affirmative defense. In fact, the Seventh Circuit has strongly advised district courts against resolving Rule 12(b)(6) motions on the basis of affirmative defenses as such defenses are external to the complaint and the mere presence of an affirmative defense does not render a complaint invalid. *Brownmark Films*, 682 F.3d at 690.

This admonition alone is sufficient cause for the Court to reject Motorola's argument in favor of their motion. That being said, the Court acknowledges that the Seventh Circuit has also indicated that granting a Rule 12(b)(6) motion the basis of an affirmative defense may be permissible when all the relevant facts are in the record. *Id.* However, the Court does not believe that to the be the case here. As previously mentioned, there is an exception to the immunity statute claimed by Motorola for "willful and wanton misconduct" and the Klevens argue their complaint sets forth enough facts and inferences to establish Motorola's behavior fits within that exception. Ind. Code § 36-8-16.7-43; (DE 47 at 20.). Therefore, even if the Court assumes, without deciding, Motorola is eligible for statutory immunity it is plausible the Klevens could nonetheless prevail on their claim by establishing Motorola fits into the exception.[6]

---

[6] Motorola argues that the Klevens' have not alleged willful or wanton misconduct in their complaint and therefore cannot argue this exception to the statutory immunity. (DE 48 at 6.) This appears to be a correct description of the complaint but is not dispositive. First, Motorola does not cite to any authority requiring the Klevens' complaint to anticipate and include answers to possible affirmative defenses. Second, the Klevens argue the facts in their complaint allow the trier of fact to infer Motorola's misconduct was willful or wanton, which would be sufficient for the trier of fact to conclude the exception applied.

The Court concludes the Klevens have pled sufficient facts, namely the twenty-five alleged "negligent, grossly negligent, and reckless" acts, to claim that Motorola's actions were wanton or willful and therefore state a plausible claim for relief. (DE 5 at ¶ 636(a)–(y).) Assuming these pleaded facts as true for the purpose of this motion, the Klevens have established that Motorola's conduct could rise to the level of willful or wanton misconduct. *Reynolds*, 623 F.3d at 1146. Willful or wanton misconduct has two elements: (1) the defendant must have knowledge of an impending danger or consciousness of a course of misconduct calculated to result in probable injury, and (2) the actor's conduct must have exhibited an indifference to the consequences of his own conduct. *Howard Cty.*, 172 N.E.3d at 1271 (internal citations omitted). It is entirely plausible that Motorola knew of the impending dangers which would result from inadequately implementing and training the staff for a 911 dispatch system, such as the system failing to provide aid to persons in dire need of help. It is further plausible that Motorola's alleged twenty-five tortious acts, such as launching the system with issues unresolved, constitutes an indifference to the consequence of their own conduct.

Therefore, the Court concludes that granting the motion to dismiss on the basis of Motorola's proposed affirmative defense is inappropriate because of the Seventh Circuit's admonition against resolving 12(b)(6) motions on the basis of affirmative defenses and, in the alternative, not all of the necessary facts are in the record to adjudicate the defense.

### D. Conclusion

For the reasons previously discussed, Motorola's motion to dismiss for a failure to state a claim on which relief can be granted is DENIED. (DE 40.)

SO ORDERED.

ENTERED: July 22, 2022

                                                  /s/ JON E. DEGUILIO  
                                                  Chief Judge  
                                                  United States District Court