UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

BROOKE KLEVEN, et al.,

    Plaintiffs,

    v.

Case No. 3:21-CV-961 JD

ST. JOSEPH COUNTY, et al.,

    Defendants.

**OPINION AND ORDER**

One of the defendants in this case, Clay Township, Indiana, has moved for judgment on the pleadings based on state law immunity (DE 54). For the following reasons this motion will be denied.

**A. Factual Background**

The Court assumes the parties are familiar with the facts of this case but will discuss the factual allegations in the complaint specific to Clay Township. Clay Township, as the parent entity of Clay Fire Department ("CFD"), is one of several defendants named by the plaintiffs, several members of the Kleven family ("the Klevens"), in a lawsuit stemming from events on December 31, 2019. The general facts of this incident are that the Klevens' car, with several members of the family inside, slid off the road and into a nearby retention pond in Mishawaka, Indiana. The family members in the car became trapped and they were injured before first responders could rescue them from the car, with two ultimately perishing from their injuries. The Klevens allege the tragic outcome of this accident was attributable to tortious conduct by the 911 emergency dispatchers who failed to effectively direct the necessary assistance to the Klevens

and, relevant to this motion, negligence by the first responders engaged in rescue efforts at the scene.

Clay Township's role in this incident stems from their allegedly negligent behavior as they were dispatched to the scene of the accident, arrived and took initial command of the scene, and engaged in rescue efforts alongside other responding agencies.

As relevant background, Clay Township and the City of Mishawaka are municipal corporations and governmental entities located within St. Joseph County, Indiana. (DE 5 at ¶¶ 17–18, 45.) In St. Joseph County emergency and 911 dispatch communications are handled by the St. Joseph County Public Safety Communications Consortium ("PSCC"). (*Id.* at ¶¶ 11–12, 45–57.) Clay Township maintains the CFD, which has no water rescue unit, nor the personnel, units, equipment, or authority to perform a below-surface water rescue. (*Id.* at ¶¶ 63–67.) The City of Mishawaka maintains the Mishawaka Fire Department ("MFD"). (*Id.* at ¶ 58.) MFD maintains an emergency water rescue unit known as Rescue 1, which has the appropriate personnel, units, and equipment to perform below-surface water rescues. (*Id.* at ¶¶ 60–61.)

CFD's involvement in this incident began shortly after the accident occurred, with a 911 call from a bystander to the accident that was answered by a PSCC dispatcher. (*Id.* at ¶ 86.) The bystander reported that a car had become submerged in the retention pond but erroneously reported the accident occurred in Granger, and not Mishawaka. (*Id.* at ¶¶ 86–95.) The PSCC dispatcher typed the incident location as the intersection of Fir Road and E. University Drive in Granger, and the incident type as a motor vehicle collision with unknown injuries. (*Id.* at ¶¶ 95–97.) As a result of this 911 call, the PSCC dispatched CFD to the location in Granger for a motor vehicle collision with unknown injuries.  (*Id.* at ¶ 106.)

About one second after the bystander 911 call, plaintiff Brooke Kleven made a 911 call from within the vehicle trapped in the pond. (*Id.* at ¶ 111.) This call was received by a different PSCC dispatcher. (*Id.* at ¶ 113.) Ms. Kleven reported that she was trapped in the vehicle, it was filling with water, and the vehicle was in the pond on University Drive near the Costco and the Red Roof Inn. (*Id.* at ¶¶ 116–19.) As a result of this second call, the PSCC dispatched MFD to the correct location but did not dispatch MFD Rescue 1 for the underwater rescue. (*Id.* at ¶ 445.)

Prior to the CFD arriving on the scene, the PSCC notified CFD that MFD was responding to the accident because it was in MFD's jurisdiction. (*Id.* at ¶ 526.) CFD advised the PSCC that it would respond to the scene anyway. (*Id.* at ¶ 527.) CFD arrived at the scene of the incident before MFD and assumed command. (*Id.* at ¶ 528.) The Klevens also allege that at some point after MFD's arrival, MFD assumed command of the scene. (*Id.* at ¶ 487.) The Klevens allege that both CFD and MFD directed MFD and CFD personnel during the emergency response.[1] (*Id.* at ¶¶ 488, 529–30.) The Klevens allege that because of actions by persons including employees of the PSCC, MFD, and CFD, responders arriving at the incident did not have the necessary personnel or equipment to perform an underwater rescue and there was significant delay in dispatching MFD Rescue 1 to the scene. (*Id.* at ¶¶ 446–47.)

The Klevens allege that because of a negligent response from CFD, Brooke Kleven, J.K., and N.K. each spent between twenty-five and thirty-five minutes submerged in near freezing water from the time Brooke Kleven called 911.[2] (*Id.* at ¶¶ 544–46.) During the course of the

---

[1] The Complaint is internally inconsistent about who exercised command at the scene at relevant times. *Compare* DE 5 ¶ 487–88 (alleging MFD assumed command of the scene and at all relevant times commanded CFD and MFD personnel) *with* ¶¶ 529–30 (alleging that at all relevant times CFD directed CFD and MFD personnel at the scene and CFD maintained command after MFD arrived).

[2] The names of the plaintiffs who are minor children have been redacted in accordance with the standing orders of this Court.

rescue either MFD or CFD directed all MFD and CFD personnel to cease searching the submerged minivan and extract the vehicle from the pond with a tow truck while H.K. was, unknown to the first responders, still trapped in the vehicle. (*Id.* at ¶¶ 489–92, 532–34.) This caused H.K. to be submerged for forty minutes from the time Brooke Kleven called 911. (*Id.* at ¶ 547.)

The Klevens alleged that CFD acted recklessly by responding to the accident knowing it lacked proper training, personnel, units, apparatuses, and equipment to perform a below-surface water rescue. (*Id.* at ¶ 536(a)–(e).) The Klevens also allege that CFD recklessly ceased the below-surface water rescue while H.K remained trapped in the minivan. (*Id.* at ¶ 536(f).) The Klevens further allege CFD failed to properly identify and relay the severity and urgency of the accident (*Id.* at ¶ 536(g)), that they failed to enforce/execute, and/or implement internal policies, procedures and/or protocols in regard to performing a below surface water rescue (*Id.* at ¶ 536(h)), and that they failed to perform a below-surface water rescue pursuant to local, state, and national emergency response standards and code (*Id.* at ¶ 536(i)).

The Klevens have subsequently brought several Indiana state law claims against Clay Township. Specifically, they allege that due to negligent actions by CFD, Brooke Kleven and H.K. suffered severe injuries while J.K. and N.K. lost their lives. (*Id.* at ¶¶ 548–59.) Christopher Kleven has brought a state law loss of consortium claim. (*Id.* at ¶ 549.) Brooke Kleven and H.K. have also brought state negligent infliction of emotional distress claims. (*Id.* at ¶¶ 558–59.) The Klevens have brought no federal law claims against Clay Township.[3]

---

[3] The Court has supplemental jurisdiction over these claims given the Klevens' are also bringing federal law claims against other defendants in this action and the claims against all defendants involve the same common nucleus of operative facts. *Hammond v. Clayton*, 83 F.3d 191, 194 (7th Cir. 1996).

**B. Legal Standard**

Federal Rule of Civil Procedure 12(c) permits a party to move for judgment on the pleadings after the parties have filed a complaint and answer. Fed. R. Civ. P. 12(c). Judgment on the pleadings is appropriate when there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. *United Here Loc. 1 v. Hyatt Corp.*, 862 F.3d 588, 595 (7th Cir. 2017). A moving party is entitled to judgment on the pleadings when it appears beyond doubt that the non-moving party "cannot prove any facts that would support his claim for relief." *N. Ind. Gun & Outdoors Shows v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998).

The Court is confined to the matters addressed in the pleadings and must review allegations in the light most favorable to the non-moving party. *See Kiddy-Brown v. Blagojevich*, 408 F.3d 346, 355 (7th Cir. 2005). The pleadings include "the complaint, the answer, and any written instruments attached as exhibits." *N. Ind. Gun & Outdoor Shows,* 163 F.3d at 452 (citing Fed. R. Civ. P. 10(c)). The Court may also consider documents attached to the motion for judgment on the pleadings provided they are referred to in the plaintiffs' complaint and are central to the plaintiffs' claims. *Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014). The Court may also take judicial notice of public records such as state court documents. *Spiegel v. Kim*, 952 F.3d 844, 847 (7th Cir. 2020).

**C. Discussion**

Clay Township argues that they should be granted judgment on the pleadings as Indiana state law confers immunity on them for "discretionary decisions" such as those made during the course of the rescue of the Kleven family. The Klevens respond by arguing it is improper for Clay Township to raise an affirmative defense in this motion, the record does not support

5

deciding the immunity issue at this stage of proceedings, and that there is an exception to state law immunity for "willful and wanton" misconduct. The Court finds it is inappropriate to adjudicate the immunity claim at this time and will deny this motion without reaching the merits.

The Klevens first argue that this motion should be denied as it involves an affirmative defense, and it is inappropriate to adjudicate affirmative defenses in a motion brought under Federal Rule of Civil Procedure 12(b)(6). This proposition of law is correct. The Seventh Circuit has strongly admonished district courts to not resolve Rule 12(b)(6) motions on the basis of affirmative defenses. *Brownmark Films, LLC*, *v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012). However, the instant motion is being brought pursuant to Federal Rule of Civil Procedure 12(c), not Rule 12(b)(6), and is therefore an appropriate vehicle for raising an affirmative defense at this stage. *Id.* (holding that when all relevant facts are presented, a court may dismiss a case based on affirmative defense through a Rule 12(c) motion).

The Klevens next argue that the motion should be denied because the affirmative defense of immunity turns on facts not before the Court at this stage in proceedings. The Seventh Circuit has cautioned district courts that affirmative defenses "typically" turn on facts not before the court at the Rule 12(c) stage of proceedings. *Id.* The Court finds this to be the case here and therefore will deny the motion without reaching the merits of Clay Township's immunity claim.[4]

The Court will first address the waiver argument from Clay Township's reply brief. The Township argues the Klevens have waived the issue that Clay Township is entitled to discretionary function immunity by only arguing whether an exception to that immunity applies in their response brief. The Court disagrees and will deny the waiver argument. The Court finds

---

[4] This moots the Klevens' request for the Court to convert this motion into a motion for summary judgment pursuant to Federal Rule of Civil Procedure 12(d).

that the Klevens' argument, that the record is insufficiently developed to determine if discretionary function immunity applies, as a challenge to Clay Township's invocation of discretionary function immunity. This is not a robustly developed argument, but it is sufficient to avoid waiver at this stage of the proceedings given the Seventh Circuit has cautioned lower courts about prematurely deciding immunity questions. *Id.* For reasons to be described later in this order, the Court can conceive additional facts which might come to light in discovery which would impact how the Court resolves the immunity analysis and therefore makes granting immunity at this stage premature. The Court will therefore deny the Township's argument that this issue should be decided based on waiver.

Under the Indiana Tort Claims Act, governmental entities are liable for torts committed by their employees unless one of the exceptions to the Act applies. *Leo Machine & Tool Co. v. Poe Volunteer Fire Dept., Inc.*, 936 N.E.2d 855, 860 (Ind. Ct. App. 2010). The party seeking the immunity bears the burden of establishing their conduct falls within an exception. *Id.* (citing *Mullin v. Mun. City of South Bend*, 639 N.E.2d 278, 282 (Ind. 1994)). One such exception to the Act states that "[a] government entity or an employee acting within the scope of his employment is not liable if a loss results from … (7) the performance of a discretionary function." *Id.* (quoting Ind. Code. § 34-13-3-3). Whether a particular government activity is a discretionary function is a question of law for the Court. *Id.*

The Court finds that there are not sufficient facts in the record to determine whether Clay County has carried its burden. In particular, there are not sufficient facts to determine whether the decision to tow the Klevens' vehicle from the pond was a decision formulating a policy, entitled to discretionary function immunity, or a decision implementing a policy, which is not

entitled to such immunity.[5] *Willis v. Warren Twp. Fire Dept.*, 650 N.E.2d 321, 325 (Ind. Ct. App. 1995) (holding that the court's role in adjudicating a claim for discretionary function immunity is "distinguish[ing] between decisions involving the formulation of basic policy, entitled to immunity, and decisions regarding only the execution or implementation of that policy, not entitled to immunity." (internal citation omitted)). The "critical inquiry" in evaluating whether a decision is entitled to discretionary immunity is whether the nature of the judgment called for policy considerations such as allocation of resources, and the balancing of risks and benefits. *Id.* at 324–25. In contrast, decisions which are not entitled to immunity may involve individuals making judgments "in the context of following a pre-determined policy. *Id.* at 325.

In particular, the Court finds there are insufficient facts about why firefighters chose to extract the vehicle from the pond using a tow truck, to what extent CFD was involved in that decision, and to what extent that action was a function of policy.[6] The lack of evidence on the firefighters' motive or any applicable policy means the Court is unable to decide whether this decision was a discretionary one during the course of an active rescue operation entitled to immunity, or whether it was made after the rescue operations had concluded and was merely executing a policy on how to depart an accident scene and not entitled to immunity. Put another way, the Court is unsure whether to analogize this case to the facts of *Leo Machine* where the firefighters were found to have immunity for the decision to use an excavator to tear down parts

---

[5] The Court will not decide whether there are sufficient facts to decide if immunity applies to other actions by CFD underlying the Klevens' claims at this time. The Court finds it will be more efficient to adjudicate the entire immunity claim together, should Clay Township choose to move for summary judgment.

[6] As noted above in Footnote 1, the Complaint is inconsistent regarding who made command decisions at the incident scene to cease searching the vehicle. *See also* DE 5 at ¶ 489 (alleging MFD gave the order for MFD and CFD to cease searching the vehicle), ¶ 531 (noting "MFD and CFD ceased searching the submerged vehicle").

of a building in order to suppress an ongoing fire. 936 N.E.2d at 861–63. Or, whether it is more similar to the facts of *Willis* which found that the firefighters' decision to depart the scene after the fire had been extinguished was merely exercising judgment in the context of a departmental policy. 650 N.E.2d at 325.

The record is unclear on this issue for the reasons state above. Therefore, the Court will deny the motion and decline to reach the merits of the discretionary function immunity at this stage in the proceedings.

**D. Conclusion**

For the previously stated reasons, the Court DENIES Clay Township's motion for judgment on the pleadings (DE 54).

SO ORDERED.

ENTERED: March 7, 2023

_____/s/ JON E. DEGUILIO_____
Chief Judge
United States District Court